UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 22 Cr. 256 (CM)

TAKESHI EBISAWA, et al,

Defendants.

Arraignment
------------------------------x

New York, N.Y.
May 11, 2022
10:30 a.m.

Before:

HON. COLLEEN MCMAHON,

District Judge

APPEARANCES

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
BY: ALEXANDER N. LI
Assistant United States Attorney

EVAN LIPTON
Attorney for Defendant Ebisawa

RACHEL PERILLO for DAVID STERN
Attorney for Defendant Singhasiri

LISA SCOLARI
Attorney for Defendant Chullanandana

JENNIFER BROWN FOR CLAY KAMINSKY
Attorney for Defendant Rukrasaranee

(Case called)

THE CLERK: Counsel, state your appearance.

MR. LI: Good morning, your Honor.

Alexander Li for the government.

MR. LIPTON: Good morning, your Honor.

Evan Lipton on behalf of Mr. Takeshi Ebisawa who is seated in the first row of the jury box.

MS. SCOLARI: Good morning, your Honor.

Lisa Scolari for Mr. Chullanandana who is on the far end of the jury box, farther from the Court.

MS. PERILLO: Good morning, your Honor.

Rachel Perillo for Mr. Singhasiri, and I'm standing in for David Stern who's on trial. Mr. Singhasiri is in the second row to the left.

MS. BROWN: Good morning, your Honor.

Jennifer Brown, I'm standing in for Mr. Kaminsky who unfortunately has Covid but recovering for Mr. Rukrasaranee.

THE COURT: Okay. Have a seat.

First of all, I apologize, everyone. My wires got cross with Mr. O'Neil. I had a physical therapy appointment this morning and he didn't know about it, but I'm here now.

So, Mr. Li, why don't you tell me what is going on here.

MR. LI: Thank you, your Honor.

We're here for a initial pretrial conference.

THE COURT: I know that. Why don't you tell me what's going on here. Why are we here?

THE DEPUTY CLERK: At arraignment, your Honor.

MR. LI: Yes, your Honor.

I'll start with just an overview of the case if the Court will permit. This case arises out of a three-year investigation by the Drug Enforcement Administration and its international partners, really centered on the activities of Mr. Ebisawa, the lead defendant.

The investigation identified Mr. Ebisawa as a leader of the Yakuza transnational crime syndicate based in Japan. Over the course of the investigation, which included meetings and activities in many countries including Burma, Thailand, Denmark and the United States, the DEA identified additional associates with whom Mr. Ebisawa was involved.

In particular, about three years ago the DEA undercover agent met with Ebisawa posing a narcotics and arms trafficker, and the undercover did that because Mr. Ebisawa had previously told a confidential source that Mr. Ebisawa was interested in selling narcotics and interested in buying weapons, heavy weapons. And out of those meetings with the undercover agent, there came three transactions which are really the center of the complaint and the indictment.

The first transaction is described in Count One and Two of the complaint and the indictment, and that is really the

simplest part of this case. It's a narcotics deal involving Mr. Ebisawa and Mr. Singhasiri.

Mr. Ebisawa introduced Mr. Singhasiri to the undercover as a leader of the Yakuza based in Thailand who is capable of supplying large quantities, hundreds of kilos of methamphetamine and heroin.

Mr. Ebisawa put the undercover in direct contact with Mr. Singhasiri and they negotiated essentially the purchase of a sample in furtherance of a larger transaction, and that sample was approximately one kilogram of methamphetamine, and approximately 1.4 kilograms of heroin which was in fact delivered in Thailand.

As part of those conversations, they also discussed how Mr. Singhasiri's narcotics suppliers who were purported based in Burma needed weapons, heavy weapons to protect their drug business, and that is the basis for Counts One and Two of the indictment which is a narcotics importation conspiracy and a conspiracy to possess machine guns.

The second transaction is the basis for Counts Three, Four and Five of the complaint and the indictment. This transaction involved Mr. Ebisawa and the last two defendants in the indictment, Mr. Chullanandana and Mr. Rukrasaranee.

Early on Mr. Ebisawa told the undercover agent that he was looking for weapons to purchase for buyers in Burma and for what appears to be the Tamil Tigers.

After the coup in Burma, Mr. Ebisawa's focus shifted to two particular ethnic armed groups in Burma who required weapons to fight the government. Mr. Ebisawa asked the undercover agent to supply him with those weapons, and those weapons were brokered with Mr. Ebisawa and his associates Mr. Chullanandana and Mr. Rukrasaranee, who would essentially be conduits to those Burmese factions.

As part of that transaction, Mr. Ebisawa went to Denmark where he inspected the weapons that the undercover purported to have for sale, and one of those photographs is in the complaint. These are heavy caliber weapons. These are machine guns. Three are rocket launchers, and they do include surface-to-air-missiles, stinger missiles, that Mr. Ebisawa and his associates attempted to purchase.

They sent weapon lists. They had numerous conferences, calls, video calls, meetings, where they discussed the weapons, including video calls with the leaders directly of those ethnic armed groups in Burma who were attempting to purchase those weapons.

As part of the options for payment for those weapons, Mr. Ebisawa, Mr. Chullanandana and Mr. Rukrasaranee offered to pay, in part, using large quantities of narcotics that would be produced by those armed groups, and that is the basis for Counts Three, Four and Five which is a surface-to-air missiles conspiracy count, a narcotics importation count, and a machine

guns conspiracy count.

THE COURT: And the reason that Counts One and Two are joined with Counts Three, Four and Five not to anticipate anything that may have occurred to Ms. Scolari or Mr. Kaminsky, but --

MR. LI: The reason they're joined, your Honor, is because of Mr. Ebisawa.

THE COURT: I know, but that doesn't mean they're joinable. What's the theory of joinder?

MR. LI: The theory of joinder is that there is a common nucleus of fact here which is Mr. Ebisawa's introduction of this undercover agent to really these different arms of his business dealings.

One was the supply of narcotics directly to the United States via Mr. Singhasiri; another was a weapons for drugs transaction via Mr. Chullanandana and Mr. Rukrasaranee. And I also note, your Honor, that Mr. Singhasiri purported that his drugs were coming from Burma, and really from one of the various ethnic factions that was involved.

And, again, the weapons that Mr. Ebisawa was attempting to broker for sale were also to Burmese armed ethnic factions, so we really do believe there is a common nucleus of fact for both.

THE COURT: I'm sure we'll litigate that.

MR. LI: Your Honor, the third transaction in this

case is a money laundering count, and that is Count Six of the indictment, and this is Mr. Ebisawa alone.

As part of essentially a demonstration of his capabilities, the undercover asked Mr. Ebisawa to transfer a $100,000 from New York to Japan for the purported purpose of paying a narcotics trafficker -- a narcotics transporter based in Japan.

Mr. Ebisawa did exactly that, and he kept a 15 percent commission for himself upon delivery of the proceeds in Japan, and that is the basis for Count Six which is the money laundering count.

THE COURT: OK. All right. Well, thank you. I appreciate the summary. I understand that we have to arraign the defendants.

MR. LIPTON: Yes, Judge.

THE COURT: Mr. O'Neil.

THE CLERK: Mr. Ebisawa, Mr. Singhasiri, Mr. Chullanandana and Mr. Rukrasaranee, the United States Attorney for the Southern District of New York has filed an indictment, 22 Cr. 256. It charges each of you with various crimes.

Mr. Ebisawa, stand up, sir.

The indictment charges you in Count One with narcotics importation conspiracy.

Count Three conspiracy to acquire anti-aircraft

missiles, and Count Four, narcotics importation conspiracy; Count Five, conspiracy to possess machine gun, and Count Six money laundering.

THE COURT: You didn't mention Count Two. I think he's a defendant on all six counts.

MR. LI: Your Honor, respectfully, Mr. Ebisawa is not charged in Count Two.

THE COURT: He's not charged in Count Two.

Thank you.

THE CLERK: Counsel, have you shared this indictment with your client, discussed it with him?

MR. LIPTON: Yes, I've reviewed the indictment with my client. I believe he understands the charges against him. I waive the public reading and ask that the Court enter a plea of not guilty on his behalf.

THE CLERK: A plea of not guilty is entered, Judge?

THE COURT: It is entered.

THE CLERK: Sir, you may sit down.

Mr. Singhasiri, stand, sir.

The indictment, 22 Cr. 256, charges you in two counts. Count One, narcotics importation conspiracy, and Count Two, conspiracy to possess machine guns.

Counsel, has your client received a copy of the indictment? You've discussed it with him?

MS. PERILLO: Your Honor, I've reviewed the indictment

with him. We are in the process of having a copy of the indictment translated for him, but we have reviewed it and he understands the charges against him.

THE CLERK: You waive formal reading of the charges?

MS. PERILLO: Yes, we do.

THE CLERK: And at this time will enter a plea for your client?

MS. PERILLO: Not guilty.

THE COURT: Thank you.

THE CLERK: Sir, you may sit down.

Mr. Chullanandana, the indictment charges you in Count Three -- actually, Mr. Rukrasaranee, you can stand as well.

You are both charged with the same counts in this indictment. Count Three, conspiracy to acquire anti-aircraft missiles, Count Four, narcotics importation conspiracy, and Count Five, conspiracy to possess machine guns.

Counsel for Mr. Chullanandana, have you given your client a copy? You discussed it with him?

MS. SCOLARI: Yes, I have showed a copy of the indictment to Mr. Chullanandana. We have discussed it. He understands the charges. He waives a public reading and wishes to enter a plea of not guilty.

THE COURT: Thank you, Ms. Scolari.

THE CLERK: Mr. Chullanandana, you can sit down.

And counsel for Mr. Rukrasaranee.

MS. BROWN: Yes. Mr. Kaminsky reviewed the indictment with his client yesterday. I provided him with a copy this morning. We would waive a public reading and enter a plea of not guilty.

THE CLERK: Thank you, sir. You may sit down.

THE COURT: OK. So having heard that this is a complicated case, a long investigation, why doesn't the government tell me what the status of discovery is?

And do me a favor, stay seated. You may remove your mask when you're speaking.

MR. LI: Thank you, your Honor.

We are presently collecting the discovery and will be producing the discovery on a rolling basis. I'm happy to go over some of the categories of the discovery with the Court.

THE COURT: I hope you will, categories and quantity, anticipated quantity.

MR. LI: Yes, your Honor.

The quantity, as the Court anticipated, is going to be voluminous. The core of this case is going to be very large quantity of recorded communications with the defendants, including recorded meetings, recorded telephone calls, recorded video conferences and recorded electronic communications. There are hundreds of such recordings, quite likely over a thousand.

We have collected, we believe, all of them at this

point, and we are continuing to get them transcribed, and as necessary translated as a courtesy which we are going to be producing to the defendants.

THE COURT: Unless you speak Thai, Burmese, Japanese and various other assorted languages, it's not as a courtesy to them, it's as a courtesy to you.

MR. LI: Yes, your Honor. That's absolutely right. The bulk of the communications actually weren't in English because --

THE COURT: I'm sure they were not.

MR. LI: I'm sorry. Actually, the bulk of the communications actually were English because Mr. Ebisawa and Mr. Chullanandana, in particular, do speak English, so the bulk actually were in English, but there were a substantial number that were in foreign languages or had portions in foreign languages which we are having translated.

So I do anticipate, your Honor, that that will be really the core of the case, but of course there's other discovery.

THE COURT: Let's say we got a thousand such communications, and when will you begin producing them?

MR. LI: Your Honor, we have received the bulk of them. I expect we will begin producing them within approximately two weeks, and it is my hope that we will produce substantially all of the materials currently in our position

within a month.

Some of those additional materials, your Honor, will include law enforcement reports and records of meetings that were held in Thailand and Denmark and Japan and in the United States, will include photographs, videos, including physical narcotics, lab tests results of those narcotics, include records of financial transactions of tolls of online accounts. And it will include some extractions of devices, and let me put a finer point on that, your Honor.

In connection with the arrests, which all occurred in Manhattan, each of the defendants provided consent to search the devices that were on his person as well as the hotel rooms that they had booked, and so there are a number of devices that have been seized and we are in the process of extracting.

In addition, there were several electronic devices that were in the hotel rooms of Mr. Ebisawa and Mr. Singhasiri that we obtained warrants to search out of an abundance of caution, and so those devices are presently also -- we're attempting to get into them for extraction, but we have not yet been able to get inside those devices.

THE COURT: How long do you think the process of extracting from these devices is going to take?

MR. LI: For the devices that we are able to get into, your Honor, I expect we'll be able to get into them within -- I should say, I expect we will be able to extract them within

approximately a week.

For the devices that we have not yet been able to get into, that process is ongoing. There really is no ability to be certain when we'll be able to crack a device. It could take weeks. It could take months, and that I'm not confident as to when we'll be able to get into those devices.

There was also one other search warrant, your Honor, which was for an iCloud and for WhatsApp accounts operated by Mr. Ebisawa. We do have those returns and will be producing those.

That I think, your Honor, summarizes the materials that are in our position and that we will be producing in this case. And, again, I anticipate we'll be able to produce substantially all of it within approximately a month.

I do want to flag that because of the international character of this case, there is going to be a substantial volume of discovery that we obtain pursuant to Mutual Legal Assistance Treaties, including to Japan, to Thailand and to Denmark.

It is my experience that it often takes several months for those foreign governments to provide those materials. We will, of course, provide them as soon as we receive them, but I cannot predict exactly when we will receive the results of those MLATs from those foreign countries.

THE COURT: OK. All right.

What else does the government have to share with me and defense counsel on the record?

MR. LI: Your Honor, we have conferred with the defense as to what might make sense for next steps. It is my understanding that the defense will require some time to review the discovery, which makes sense given the nature of the case.

And in consultation with the defense, we would propose coming back in September. The dates proposed by the defense are September 27th or 28th if that is convenient for the Court.

THE COURT: I will be here. OK.

Let me look at the back table. Who, if anybody, wants to speak.

MR. LIPTON: Thank you, Judge. Evan Lipton for Mr. Ebisawa.

THE COURT: Hello, Mr. Lipton.

MR. LIPTON: So we have conferred with the government. We agree that September 27th is a good date to come back to court to check in on the discovery process. I have no anticipation that we will be complete with the review by that date.

THE COURT: I don't think you'll have full production by that date.

MR. LIPTON: Nonetheless, we think it's a good check-in date. I've also spoken to defense counsel and we believe it's a good idea to request that a discovery

coordinator be appointed in this case. Everybody is CJA counsel in this case, and we've heard about the voluminous amount of discovery. I will get the appropriate paperwork to the Court to make that request.

THE COURT: That's fine. Consider it granted.

I'm not around for the next three weeks, so Mr. O'Neil is here. You can get the paperwork to him and he can start reviewing it.

MR. LIPTON: I'll make that happen as quickly as possible.

THE COURT: Do you have any idea who you'd like to have do this?

MR. LIPTON: Yes, Ms. Almeida.

THE COURT: OK. Good.

MR. LIPTON: I believe that's all from this table, unless there's anything from the Court.

THE COURT: OK. Terrific. All right.

Well, in that case, Mr. O'Neil, let's put this on for the 27th of September.

THE CLERK: Yes, two o'clock.

THE COURT: Two o'clock, September 27.

Time excluded in the interest of justice. The defendant's interest in a speedy trial being outweighed by the need for counsel to review discovery, the production of which is being delayed somewhat, both by the need to translate some

of the discovery into English and the fact that some of that discovery is only obtainable via MLAT procedures which takes some period of time.

With that, gentleman, I'm Judge McMahon. I'm the judge who is assigned to your case, and I'll be supervising these proceedings and conducting the trial.

We are giving your lawyers the period over the summer to look at the discovery that the government will produce. It will also be produced to you, and I will see you on September the 27th and we will have our next conference.

Anything else that we need to do today?

MR. LI: Nothing from the government, your Honor.

THE COURT: OK, and I do apologize for keeping you waiting.

(Adjourned)