ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                    :
UNITED STATES OF AMERICA                            :
                                                    :       SUPERSEDING INDICTMENT
          - v. -                                    :
                                                    :       S3 22 Cr. 256 (CM)
TAKESHI EBISAWA and                                 :
SOMPHOP SINGHASIRI,                                 :
                                                    :
                   Defendants.                      :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COUNT ONE**
**(Conspiracy to Commit International Trafficking of Nuclear Materials)**

The Grand Jury charges:

**Overview**

1.     TAKESHI EBISAWA, the defendant, is a leader of the Yakuza organized crime
syndicate, a highly organized, transnational Japanese criminal network that operates around the
world.   EBISAWA's criminal activities have included large-scale narcotics and weapons
trafficking, and his international criminal network extends through Asia, Europe, and the United
States, among other places.   As set forth below, as part of his illicit activities, TAKESHI
EBISAWA, the defendant, conspired with a network of associates, including three co-conspirators
not named as defendants herein ("CC-1," "CC-2," and "CC-3," respectively), to traffic nuclear
materials from Burma to other countries.   During the course of this conspiracy, EBISAWA and
his co-conspirators transported a sample of nuclear materials from Burma to Thailand and
presented it to a Drug Enforcement Administration ("DEA") undercover agent ("UC-1"), who was
posing as a narcotics and weapons trafficker who purportedly had access to an Iranian general, to
demonstrate their ability to supply nuclear materials to that purported general.   Thai law
enforcement authorities subsequently seized the nuclear sample and transferred it to the custody

of U.S. law enforcement. A U.S. nuclear forensic laboratory has since confirmed that the sample contains uranium and weapons-grade plutonium.

**EBISAWA's Initial Efforts to Sell Nuclear Materials**

2. Beginning in early 2020, in a series of telephonic and electronic communications over encrypted applications, TAKESHI EBISAWA, the defendant, informed UC-1 and a DEA confidential source ("CS-1") that EBISAWA had access to a large quantity of nuclear materials that he wished to sell.[1] For example, on or about February 8, 2020, during a recorded call, EBISAWA asked CS-1 whether CS-1 had a buyer for "uranium." EBISAWA explained that the uranium was "dangerous" and was "not good for your health." Shortly thereafter, EBISAWA sent CS-1 a series of photographs depicting a dark rocky material with a Geiger counter, which is used to measure radiation. On or about April 23, 2020, during a recorded call, EBISAWA asked if UC-1 had a "buyer" for the "uranium," and expressed his desire to sell the materials because "[w]e have a big commission." On or about June 18 and August 24, 2020, EBISAWA sent UC-1 a series of photographs depicting rocky substances with Geiger counters measuring radiation, as well as pages of what EBISAWA represented to be lab analyses indicating the presence of the radioactive elements thorium and uranium. Two of the photographs sent by EBISAWA are shown below:

[1] Unless otherwise specified, EBISAWA, CC-2, CC-3, UC-1, and CS-1 communicated in English. CC-1 spoke in Thai, and CC-2 translated for CC-1 during the communications described herein. CS-2 (described below) spoke in Farsi, and UC-1 translated for CS-2. Unless otherwise specified, all statements are described in substance and in part, and are based on draft transcriptions and (where necessary) English translations. Grammatical and typographical errors appear as in the original communications unless otherwise indicated.




3.     In response to the repeated inquiries from TAKESHI EBISAWA, the defendant, about whether UC-1 knew anyone who would be interested in purchasing nuclear materials, UC-1 pretended to agree, as part of the DEA's investigation, to help EBISAWA broker the potential sale of EBISAWA's nuclear materials to an individual who UC-1 represented was an Iranian general, but who was, in fact, second DEA confidential source ("CS-2") posing as a general (the "General"). For example, on or about August 31, 2020, during a recorded call, EBISAWA reminded UC-1 that EBISAWA had access to "uranium" and asked if Iran might "buy . . . direct from us." On or about September 3, 2020, UC-1 provided EBISAWA with an undercover email

address (the "UC Account") that UC-1 told EBISAWA was operated by the General, but was, in

fact, operated by UC-1. UC-1 messaged EBISAWA informing him that the General "is the

decision maker on the stuff you have available for sale," referring to EBISAWA's nuclear

materials, and that UC-1 had spoken with the General "and he is very interested." On or about

September 5, 2020, UC-1 sent a message to EBISAWA asking: "How enriched is it? Above 5

percent? They don't need it for energy, Iranian government need it for nuclear weapons."

EBISAWA replied: "I think so and I hope so."

4.      TAKESHI EBISAWA, the defendant, then continued to pursue the sale of nuclear

materials purportedly destined for Iran for use in its nuclear weapons program, both directly with

the UC Account and through UC-1. For example, on or about September 12, 2020, EBISAWA

emailed the UC Account a letter in the name of a mining company offering to sell "50 MT" (*i.e.*,

metric tons) of uranium and thorium for a total price of $6,850,000. On or about September 19,

2020, on a recorded call, UC-1 told EBISAWA that the Iranian government needed the uranium

for a "nuclear weapon." EBISAWA responded "Yes, I know." On the same call, EBISAWA

added that he could supply "plutonium" that would be even "better" and more "powerful" than

uranium for Iran's use. EBISAWA noted that he did not have a "license" to deal in these materials,

and UC-1 acknowledged that "[t]his is gonna be a very quiet and secret illegal transaction."

EBISAWA agreed "yes, so that is why we need to talk fast about that."

### EBISAWA's Efforts to Sell Nuclear Materials in Exchange for Weapons

5.      As set forth in part above, TAKESHI EBISAWA, the defendant, is also involved

in large-scale international weapons trafficking. For example, on or about May 9, 2021, as part of

their ongoing discussions about EBISAWA's efforts to procure military-grade weapons for

EBISAWA's customers, EBISAWA sent UC-1 a message with a list of weapons, including

surface-to-air missiles ("SAMs"), that EBISAWA wished to order from UC-1.  The order list sent by EBISAWA is shown below:

```
1) AK 47 = 5,000 units
Ammo = 1 mil rounds
Magazine (large) = 25,000 clips
2) M16 = 5,000 units
Ammo = 1 mil rounds
Magazine (large) = 25,000 clips
3) M60  Machine guns = 20 units
Ammo
Tracer: 35,000 rounds
Regular: 35,000 rounds
Armor Piercing: 35,000 rounds
4) Mortar
60mm = 20 units
Rocket = 1,000
80mm = 20 units
Rocket = 1,000
105mm = 20 units
Rocket =1,000
120mm = 20 units
Rockets = 1,000
5) Snipers
w/regular scope = 10 units
W/night vision scope = 10 units
Ammo = 1,000 rounds
6) RPG = 50 units
Additional rockets = 500
7) Portable SAM = 20 units
Reloadable? If yes, then additional
rockets = 100 pieces.          5:26 AM
```

6.        On or about May 12, 2021, TAKESHI EBISAWA, the defendant, sent UC-1 a photograph and the name of CC-1, who is the leader of an ethnic insurgent group in Burma. EBISAWA added that CC-1 was "a buyer's BOSS" and "No 1."  On or about May 13, 2021, on a recorded call with UC-1, EBISAWA confirmed that the buyer of the weapons was CC-1.  Soon thereafter, EBISAWA introduced UC-1 to two other brokers, CC-2 and CC-3, who were also working with EBISAWA on the weapons deal for CC-1.

7.     While negotiating the weapons deal, TAKESHI EBISAWA, the defendant, proposed to UC-1 that CC-1 sell uranium, through EBISAWA, to the General in order to fund CC-1's weapons purchase. On or about May 22, 2021, on a recorded call, EBISAWA asked UC-1 whether the General was still interested in purchasing nuclear materials. UC-1 assured EBISAWA that the General was still interested. On or about June 30, 2021, in a group chat with EBISAWA, CC-2, CC-3, UC-1, and CS-1, EBISAWA circulated a photograph of a handwritten note stating "U3O8 80% purity[,]" referring to U3O8, or triuranium octoxide, which is a compound of uranium commonly found in the uranium concentrate powder known as "yellowcake." The next day, on or about July 1, 2021, CC-2 asked in the group chat for an update on the "Yellow Powder," and advised that the "seller is also . . . [t]he same person who will purchase" the weapons, *i.e.*, CC-1. Later that day, UC-1 responded in the group chat that UC-1's "customer is very interested and will make this happen if the product is high grade and meet their program requirements." On or about July 23, 2021, UC-1 wrote in the group chat that "the buyer, the Iranian general," — a reference to the General — wanted to "send either his nuclear physicist or one of the engineers to see and inspect the Y powder." In response to this message and an update on the weapons deal, EBISAWA replied, "Thx my friend."

8.     On or about August 20, 2021, UC-1 and CS-1 participated in a conference call with CC-2 and CC-3, which was recorded, to discuss the nuclear transaction. During the call, CC-2 advised that CC-1 had available uranium in the compound U3O8, as well as Thorium-232, which could be converted into Uranium-233 and "weaponized" into a "nuclear weapon." After the call, in another group chat involving TAKESHI EBISAWA, the defendant, CC-2, CC-3, UC-1, and CS-1, CC-2 circulated a photograph of a handwritten paper with the heading "Yellow Cake" (meaning, as noted above, uranium concentrate powder) and listing 101.488 kilograms of U3O8

6

and 2,412.925 kilograms of Thorium-232.  CC-2 also sent a photograph of a Geiger counter, held above a yellow drum, as depicted below:



9.      On or about August 28, 2021, CC-1, CC-2, and CC-3 met in northern Thailand, near the border with Burma.  At the meeting, CC-1 told CC-2 and CC-3 that CC-1 had been mining uranium in CC-1's territory in Burma.  CC-1 showed CC-2 and CC-3 photographs on CC-1's cellphone of what he represented to be the uranium.  CC-2 told CC-1 that the potential buyer was an Iranian general, and advised CC-1 that if the uranium was suitable for Iran's nuclear weapons program, Iran would buy it.  Later in the meeting, TAKESHI EBISAWA, the defendant, UC-1, and CS-1 joined CC-1, CC-2, and CC-3 by videoconference.  During the videoconference, which was recorded, UC-1 thanked CC-1 for the nuclear materials business and added that the Iranians were happy.  After the videoconference, UC-1 wrote in a group chat with EBISAWA, CC-2, CC-3, and CS-1 to "make sure with [CC-1] that U308 is enriched enough for the Iranian W program,"

a reference to Iran's nuclear weapons ("W") program. CC-2 responded "Ok, I will," and EBISAWA added "Thx."

10. On or about September 10, 2021, TAKESHI EBISAWA, the defendant, and CC-3 participated in a recorded conference call with UC-1, CS-1, and CS-2, who was posing as the General. During the call, UC-1 introduced CS-2 as one of the "head generals" in charge of the IRGC and "one of the head decisionmakers on the program, on the nuclear program that we have discussed." CS-2 stated that CS-2 was "very interested" in "the enriched uranium you have available" for CS-2's "nuclear weapon program," and proposed sending engineers to inspect the uranium. EBISAWA responded: "Ok, great, great, great, ok." After emphasizing that "the government is interested" and "in need of enriched uranium . . . for the nuclear weapon program," CS-2 asked how much enriched uranium EBISAWA and CC-3 had available. CC-3 replied that they had 100 kilograms "ready to go" and could produce another 500 kilograms in approximately "30 days."

## EBISAWA and His Co-Conspirators' Provide a Nuclear Sample which Includes Weapons-Grade Plutonium

11. On or about February 4, 2022, CC-1, CC-2, and CC-3 again met in Thailand. UC-1 participated in a portion of the meeting by videoconference, which was recorded. During the videoconference, CC-2 advised that CC-1 had available more than 2,000 kilograms of Thorium-232 and more than 100 kilograms of uranium in the compound U3O8, and CC-2 said CC-1 could produce as much as five tons of nuclear materials in CC-1's territory, which is located in Burma. UC-1, in turn, advised that the General was interested in obtaining CC-1's nuclear materials for Iran's nuclear program. UC-1 asked about the potential exchange of uranium from CC-1 for weapons from Iran. CC-1 and CC-2 stated that they had "discussed the same topic" before the videoconference and CC-1 had "the same idea." CC-2 also informed UC-1 that CC-1 had provided

8

samples of the uranium and thorium for the group, which CC-2 was prepared to show to the Iranian buyers. CC-2 noted that the samples should be packed "to contain . . . the radiation."

12.    About a week later, on or about February 11 and 12, 2022, TAKESHI EBISAWA, the defendant, CC-2, and CC-3 participated in a series of recorded meetings with UC-1 and CS-1 in Phuket, Thailand to discuss their ongoing weapons, narcotics, and nuclear materials transactions, during which CC-1's samples of nuclear materials procured by the group were displayed to UC-1. Specifically, on or about February 12, 2022, CC-2 asked UC-1 to meet in CC-2's hotel room. Inside the room, CC-2 showed UC-1 two plastic containers each holding a powdery yellow substance (the "Nuclear Samples"), which CC-2 described as "yellowcake." CC-2 advised that one container held a sample of uranium in the compound U3O8, and the other container held Thorium-232. UC-1 photographed and video-recorded the Nuclear Samples, images of which are shown below:



13.     After viewing the Nuclear Samples in CC-2's hotel room on or about February 12, 2022, CC-2 and UC-1 joined TAKESHI EBISAWA, the defendant, CC-3, and CS-1 for a meeting. During the meeting, which was recorded, the parties discussed the weapons-for-nuclear-materials deal, including potentially arranging a meeting between representatives of CC-1 and purported representatives of the Iranian government.  At the conclusion of the meetings in Phuket, CC-2 and CC-3 took the Nuclear Samples to Bangkok, Thailand, where they placed the samples in an office controlled by CC-2 (the "Bangkok Office").

14.     On or about May 12, 2022, Thai law enforcement authorities searched the Bangkok Office and recovered the Nuclear Samples, which were subsequently transferred to the custody of

U.S. law enforcement authorities.  A U.S. nuclear forensic laboratory then examined the Nuclear Samples and determined that both samples contain detectable quantities of uranium, thorium, and plutonium.  In particular, the laboratory determined that the isotope composition of the plutonium found in the Nuclear Samples is weapons-grade, meaning that the plutonium, if produced in sufficient quantities, would be suitable for use in a nuclear weapon.

## Statutory Allegations

15.      From at least in or about May 2021 to in or about April 2022, in the Southern District of New York, Thailand, Burma, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, TAKESHI EBISAWA, the defendant, who was first arrested in the Southern District of New York, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 831(a)(3).

16.      It was a part and an object of the conspiracy that TAKESHI EBISAWA, the defendant, who after the conduct required for the offense occurred was found in the United States, and others known and unknown, at least one of whom was a national of the United States, would and did, without lawful authority, knowingly and intentionally carry, send, and move nuclear material into and out of a country, in violation of Title 18, United States Code, Section 831(a)(3).

17.      In furtherance of the conspiracy and to effect the illegal object thereof, TAKESHI EBISAWA, the defendant, and his co-conspirators, including CC-1, CC-2, and CC-3, committed the overt acts set forth in paragraphs 7 through 13, among other overt acts.

(Title 18, United States Code, Section 831(a)(9), (b)(2), (c)(2)(A), and (c)(3); and
Title 18, United States Code, Section 3238.)

## COUNT TWO
### (International Trafficking of Nuclear Materials)

The Grand Jury further charges:

18.     From at least in or about May 2021 to in or about February 2022, in the Southern District of New York, Thailand, Burma, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, TAKESHI EBISAWA, the defendant, who was first arrested in the Southern District of New York, and who after the conduct required for the offense occurred was found in the United States, without lawful authority, intentionally carried, sent, and moved nuclear material into and out of a country, and aided and abetted the same, together with an offender who was a national of the United States, to wit, EBISAWA brokered the sale of nuclear material from Burma to other countries, and in furtherance of that transaction, EBISAWA's associates, one of whom was a U.S. citizen, unlawfully transported nuclear material from Burma to Thailand.

(Title 18, United States Code, Sections 831(a)(3), (b)(1), (c)(2)(A), and (c)(3), 2, and 3238.)

## COUNT THREE
### (Narcotics Importation Conspiracy)

The Grand Jury further charges:

19.     From at least in or about June 2019 to in or about April 2022, in the Southern District of New York, Thailand, Indonesia, Japan, Burma, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, TAKESHI EBISAWA and SOMPHOP SINGHASIRI, the defendants, who were first arrested in the Southern District of New York, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

20.     It was a part and an object of the conspiracy that TAKESHI EBISAWA and SOMPHOP SINGHASIRI, the defendants, and others known and unknown, would and did import into the United States and into the customs territory of the United States from a place outside thereof controlled substances, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

21.     It was further a part and an object of the conspiracy that TAKESHI EBISAWA and SOMPHOP SINGHASIRI, the defendants, and others known and unknown, would and did manufacture, distribute, and possess with intent to distribute controlled substances, intending, knowing, and having reasonable cause to believe that such substances would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 959(a) and 960(a)(3).

22.     The controlled substances that TAKESHI EBISAWA and SOMPHOP SINGHASIRI, the defendants, conspired to (a) import into the United States and into the customs territory of the United States from a place outside thereof, and (b) manufacture, distribute, and possess with intent to distribute, intending, knowing, and having reasonable cause to believe that such substances would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, were (i) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Section 960(b)(1)(H), and (ii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 960(b)(1)(A).

(Title 21, United States Code, Section 963; and
Title 18, United States Code, Section 3238.)

## COUNT FOUR
### (Conspiracy to Possess Firearms, Including Machineguns and Destructive Devices)

The Grand Jury further charges:

23.     From at least in or about February 2020 to in or about April 2022, in the Southern District of New York, Thailand, Burma, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, SOMPHOP SINGHASIRI, the defendant, who was first arrested in the Southern District of New York, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 924(c).

24.     It was a part and an object of the conspiracy that SOMPHOP SINGHASIRI, the defendant, and others known and unknown, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics importation conspiracy charged in Count Three of this Superseding Indictment, would and did knowingly use and carry firearms, and, in furtherance of such drug trafficking crime, knowingly possess firearms, including machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 924(c)(1)(B)(ii).

(Title 18, United States Code, Sections 924(o) and 3238.)

## COUNT FIVE
### (Conspiracy to Acquire, Transfer, and Possess Anti-Aircraft Missiles)

The Grand Jury further charges:

25.     From at least in or about June 2019 to in or about April 2022, in the Southern District of New York, Thailand, Indonesia, Japan, Burma, Denmark, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, TAKESHI EBISAWA, the defendant, who was first arrested in the Southern District of

New York, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 2332g.

26.     It was a part and an object of the conspiracy that TAKESHI EBISAWA, the defendant, and others known and unknown, would and did knowingly acquire, transfer directly and indirectly, receive, possess, import, and export (i) an explosive and incendiary rocket and missile that is guided by a system designed to enable the rocket and missile to seek and proceed toward energy radiated or reflected from an aircraft and toward an image locating an aircraft, and otherwise direct and guide the rocket and missile to an aircraft, in violation of Title 18, United States Code, Section 2332g(a)(1)(A); (ii) a device designed and intended to launch and guide said rocket and missile, in violation of Title 18, United States Code, Section 2332g(a)(1)(B); and (iii) a part and combination of parts designed and redesigned for use in assembling and fabricating said rocket, missile, and device, in violation of Title 18, United States Code, Section 2332g(a)(1)(C).

(Title 18, United States Code, Sections 2332g(a)(1)(A), (a)(1)(B),
(a)(1)(C), (b)(1), (b)(2), (b)(5), and (c)(1), and 3238.)

## COUNT SIX
### (Narcotics Importation Conspiracy)

The Grand Jury further charges:

27.     From at least in or about June 2019 to in or about April 2022, in the Southern District of New York, Thailand, Indonesia, Japan, Burma, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, TAKESHI EBISAWA, the defendant, who was first arrested in the Southern District of New York, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

28.     It was a part and an object of the conspiracy that TAKESHI EBISAWA, the defendant, and others known and unknown, would and did import into the United States and into the customs territory of the United States from a place outside thereof controlled substances, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

29.     It was further a part and an object of the conspiracy that TAKESHI EBISAWA, the defendant, and others known and unknown, would and did manufacture, distribute, and possess with intent to distribute controlled substances, intending, knowing, and having reasonable cause to believe that such substances would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, in violation of Title 21, United States Code, Sections 959(a) and 960(a)(3).

30.     The controlled substances that TAKESHI EBISAWA, the defendant, conspired to (a) import into the United States and into the customs territory of the United States from a place outside thereof, and (b) manufacture, distribute, and possess with intent to distribute, intending, knowing, and having reasonable cause to believe that such substances would be unlawfully imported into the United States and into waters within a distance of 12 miles of the coast of the United States, were (i) 500 grams and more of mixtures and substances containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of Title 21, United States Code, Section 960(b)(1)(H), and (ii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 960(b)(1)(A).

(Title 21, United States Code, Section 963; and
Title 18, United States Code, Section 3238.)

16

## COUNT SEVEN
### (Conspiracy to Possess Firearms, Including Machineguns and Destructive Devices)

The Grand Jury further charges:

31.     From at least in or about June 2019 to in or about April 2022, in the Southern District of New York, Thailand, Indonesia, Japan, Burma, Denmark, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, TAKESHI EBISAWA, the defendant, who was first arrested in the Southern District of New York, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 18, United States Code, Section 924(c).

32.     It was a part and an object of the conspiracy that TAKESHI EBISAWA, the defendant, and others known and unknown, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics importation conspiracy charged in Count Six of this Superseding Indictment, would and did knowingly use and carry firearms, and, in furtherance of such drug trafficking crime, knowingly possess firearms, including machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 924(c)(1)(B)(ii).

(Title 18, United States Code, Sections 924(o) and 3238.)

## COUNT EIGHT
### (Money Laundering)

The Grand Jury further charges:

33.     From at least in or about October 2021 to in or about November 2021, in the Southern District of New York, Japan, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or district of the United States, TAKESHI EBISAWA,

the defendant, who was first arrested in the Southern District of New York, (a) transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, a monetary instrument and funds from a place inside the United States to and through a place outside the United States, and aided and abetted the same, with the intent to promote the carrying on of specified unlawful activity, to wit, the proceeds of the sale, distribution, and importation of a controlled substance, in violation of Title 21, United States Code; and (b) with the intent to (i) promote the carrying on of that specified unlawful activity and (ii) conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of that specified unlawful activity, conducted and attempted to conduct, financial transactions involving property represented to be the proceeds of that specified unlawful activity, and property used to conduct and facilitate that specified unlawful activity, and aided and abetted the same, to wit, EBISAWA and his associates transferred approximately $100,000 in purported narcotics proceeds from accounts in New York City to Japan in order to make payment for the transportation of narcotics.

(Title 18, United States Code, Sections 1956(a)(2), 1956(a)(3), 1956(f), 2, and 3238.)

## FORFEITURE ALLEGATIONS

34.     As a result of committing the offenses alleged in Counts One, Two, and Five of this Superseding Indictment, TAKESHI EBISAWA, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(G) and Title 28, United States Code, Section 2461(c), any and all assets, foreign and domestic, of the defendant; any and all assets, foreign and domestic, affording the defendant a source of influence over any entity or organization engaged in planning or perpetrating said offenses; any and all assets, foreign and domestic, acquired or maintained with the intent and for the purpose of supporting, planning, conducting, or concealing said offenses; and any and all assets, foreign and domestic, derived from, involved in,

18

or used or intended to be used to commit said offenses, including but not limited to a sum of money in United States currency representing the total amount of the defendant's assets.

35.     As a result of committing the offenses alleged in Counts Three and Six of this Superseding Indictment, TAKESHI EBISAWA, the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and 970, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offenses and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

36.     As a result of committing the offense alleged in Count Three of this Superseding Indictment, SOMPHOP SINGHASIRI, the defendant, shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853 and 970, any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of said offense and any and all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, said offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense.

37.     As a result of committing the offense alleged in Count Eight of this Superseding Indictment, TAKESHI EBISAWA, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

## Substitute Assets Provision

38.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        a.      cannot be located upon the exercise of due diligence;

        b.      has been transferred or sold to, or deposited with, a third person;

        c.      has been placed beyond the jurisdiction of the Court;

        d.      has been substantially diminished in value; or

        e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Sections 853 and 970; and
Title 28, United States Code, Section 2461.)


_____
FOREPERSON
3/21/24

_____
DAMIAN WILLIAMS
United States Attorney